UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT ANDERSON,

        Plaintiff,

v.

KEVIN ALLEN JUTZY, M.D.,
RAUL TUMADA, P.A., BADAWI
ABELLATIF, M.D., and ANGELA
VATRINO,

        Defendants.
_____/

CIVIL ACTION NO. 15-11727

DISTRICT JUDGE DAVID M. LAWSON

MAGISTRATE JUDGE R. STEVEN WHALEN

**REPORT AND RECOMMENDATION**

    On May 14, 2015, Plaintiff Robert Jarmel Anderson, a prison inmate in the custody of the Michigan Department of Corrections ("MDOC"), filed a *pro se* civil complaint under 42 U.S.C. § 1983, alleging deliberate indifference to his serious medical needs in violation of the Eighth Amendment. Before the Court is a motion for summary judgment [Doc. #11] filed by Defendant Angela Vettraino, a Registered Nurse employed by the MDOC. Because the Plaintiff did not exhaust his administrative remedies before filing suit, I recommend that the Defendant's motion be construed as an unenumerated motion under Fed.R.Civ.P. 12(b), that it be GRANTED, and that this Defendant be DISMISSED WITHOUT PREJUDICE.

**I.   FACTS**

    In June of 2013, Plaintiff was housed at the Macomb Correctional Facility. He alleges

that on or about June 4, 2014, he was seen by Defendant Nurse Angela Vettraino, an MDOC nurse, for complaints of a painful discharge from his penis. He claims that she refused to examine him "unless [he] was having the discharge at that very moment," and that she failed to make any further inquiries, to conduct an examination, or to schedule an appointment with a doctor. *Complaint* [Doc. #1], Statement of Facts, ¶ 1.

The Defendant seeks dismissal based on Plaintiff's failure to exhaust administrative remedies, as required by 42 U.S.C. § 1997e(a). Attached to her motion as Exhibit B is a certified copy of an MDOC Step III grievance report for inmate Robert Anderson, #352501, showing that he had not filed any Step III grievances between May of 2009 and the time the motion for summary judgment was filed. The report is accompanied by the affidavit of Logan Nurenberg.

In response, the Plaintiff concedes that he did not file a Step III grievance before filing his complaint. He argues that because he did not receive a timely response to his Step II grievance, and because the time for him to appeal to Step III expired when he was in the hospital, he "deemed his process exhausted or remedy unavailable." *Affidavit in Support of Response* [Doc. #15], ¶¶ 4-15.

The Plaintiff finally filed a Step III grievance appeal on July 28, 2015, two and one-half months after he filed his complaint. *Plaintiff's Response* [Doc. #15], Exhibit F.

Attached to the Defendant's Reply Brief [Doc. #16] as Exhibit A is a copy of the Plaintiff's Step I and Step II grievances, which were rejected for raising multiple issues.

While his main complaint was lack of appropriate treatment for hip pain and sciatica, he stated in passing at Step I that "[s]everal months before experiencing pain in his hip this grievant notified staff of a discharge he was having from his penis and was told that it was normal for a guy his age." He lists an incident date of October 21, 2014, but does not mention the June 4, 2013 date that he now alleges in his complaint. The Plaintiff did not name Defendant Vettraino at either Step I or Step II, nor did he address lack of urological treatment at Step II.

## II.   STANDARD OF REVIEW

Under the Prison Litigation Reform Act (PLRA) of 1996, specifically 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under § 1983...by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."   The exhaustion requirement is mandatory and applies to all suits regarding prison conditions, regardless of the nature of the wrong or the type of relief sought.  *Porter v. Nussle*, 534 U.S. 516, 122 S.Ct. 983, 984, 152 L.Ed.2d 12(2002); *Booth v. Churner*, 532 U.S. 731, 741, 121 S.Ct. 1819, 1825, 149 L.Ed.2d 958 (2001). Furthermore, "exhaustion" under the PLRA means "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 92, 126 S.Ct. 2378, 2387,165 L.Ed.2d 368 (2006). In *Woodford*, the Supreme Court defined "proper exhaustion" as requiring "compliance with an agency's deadlines and other critical procedural rules...." *Id.*, 548 U.S. at 90, 126 S.Ct. at 2385.  Thus, whether a claim is "properly exhausted" under the PLRA requires an examination of the

particular institution's administrative rules and regulations regarding prisoner grievances.

However, "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock,* 549 U.S. 199, 216, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007). Under *Jones*, it is Defendants' burden to assert non-exhaustion as an affirmative defense. *Id*.; *Grinter v. Knight,* 532 F.3d 567 (6th Cir.2008). *Jones v. Bock* overruled a long line of Sixth Circuit cases that placed the burden of pleading and supporting exhaustion on plaintiffs.

Under the PLRA, a dismissal for failure to exhaust nonjudicial remedies is without prejudice. *Boyd v. Corrections Corp. of America,* 380 F.3d 989, 994 (6th Cir.2006) (citing *Knuckles El v. Toombs,* 215 F.3d 640 (6th Cir.2000)); *McCloy v. Correctional Medical Services*, 794 F.Supp.2d 743, 751 (E.D.Mich. 2011).[1]

### III. DISCUSSION

The Michigan Department of Corrections (MDOC) provides prison inmates a detailed procedure for bringing forward complaints, which is set forth at MDOC Policy Directive (PD) 03.02.130.[2] This grievance procedure consists of four acts an inmate must undertake

---

[1] As I noted in *Twohig v. Riley*, 2013 WL 3773365, *3-4 (E.D. Mich. 2013), there has been a divergence of views concerning whether a motion to dismiss under 42 U.S.C. § 1997e(a) is properly characterized as a summary judgment motion, a Rule 12(b)(6) motion, or an unenumerated Rule 12(b) motion. In *Twohig*, I chose the latter as "the more sound approach, particularly given the uncertainty as to whether a dismissal based purely on exhaustion constitutes a "strike" under the PLRA...." *See also McCormick v. Corizon Health, Inc.*, 2014 WL 897371, *2 -3 (E.D.Mich. 2014)(Cleland, J.). I recommend the same approach in this case.

[2] Defendants submitted a copy of the Policy Directive as Exhibit A to Doc. #11.

before seeking judicial review, each with specific time limits. First, within two business days after becoming aware of a grievable issue, the inmate must attempt to verbally resolve the dispute with those involved. If such an attempt is not possible, or if it is unsuccessful, the inmate must then file a Step I grievance form within five days. The prison staff is required to respond in writing within 15 days, unless an extension is granted by the grievant. If the inmate is not satisfied with the response, he must request a Step II appeal form and file it within ten days after receiving the Step I response.

If the inmate is dissatisfied with the result at Step II, he or she has ten business days to appeal to Step III. The Step III appeal is handled by the MDOC Director or his designee at the Prisoner Affairs Section, Office of Program Services, in Lansing, Michigan. The Step III response concludes the standard administrative process.

There is no basis to excuse the Plaintiff's failure to complete and comply with the MDOC's grievance process before filing suit. Plaintiff argues that he is excused from doing so, in part, because he did not receive a timely response to his Step II grievance, and therefore did not have an "available" administrative remedy. In support, he cites *Boyd v. Corrections Corporation of America*, 380 F.3d 989 (6th Cir. 2004), where the Sixth Circuit held that "administrative remedies are exhausted when prison officials fail to timely respond to a properly filed grievance." *Id*. at 996. *Boyd* relied on a number of cases from other Circuits where the failure to timely respond to a prisoner's grievance rendered administrative remedies "unavailable." *See Jernigan v. Stuchell,* 304 F.3d 1030, 1032 (10th Cir.2002)

("[W]e agree that the failure to respond to a grievance within the time limits contained in the grievance policy renders an administrative remedy unavailable[.]"); *Lewis v. Washington,* 300 F.3d 829, 833 (7th Cir.2002) ("We join the Eighth and Fifth circuits on this issue because we refuse to interpret the PLRA 'so narrowly as to ... permit [prison officials] to exploit the exhaustion requirement through indefinite delay in responding to grievances.' "); *Foulk v. Charrier,* 262 F.3d 687, 698 (8th Cir.2001) ( "[O]nce [the prison] failed to respond to [the prisoner's written grievance], no further administrative proceedings were 'available' to him.").

The Plaintiff's case falls outside the purview of *Boyd* because the Policy Directive explicitly makes further administrative proceedings available even in the absence of a timely response at Step I or Step II.[3] Paragraph T of Policy Directive 03.02.130 provides as follows:

> "If a grievant chooses to pursue a grievance which has not been responded to by staff within required time frames, including any extensions granted, the grievant may forward the grievance to the next step of the grievance process within ten business days after the response deadline expired, including any extensions which have been granted."

In addition, ¶ FF states:

> "To file a Step III grievance, the grievant must send a completed StepIII grievance, using the Prisoner/Parolee Grievance Appeal form (CSJ-247B), to the Grievance and Appeals Section within ten business days after receiving the Step II response or, if no response was received, within ten business days after the date the response was due, including any extensions."

---

[3] *Boyd* arose out of a private correctional facility in Tennessee, as did *Risher v. Lappin*, 639 F.3d 236 (6th Cir. 2011), also cited by the Plaintiff.

Thus, the MDOC grievance process was not "unavailable" to the Plaintiff, notwithstanding any untimeliness in the Step II response.

The Plaintiff also argues that he was in the hospital during the 10-day period when he could have filed a Step III appeal, so that by the time he was discharged, any appeal would have been untimely, again making his remedies unavailable. But as noted in the above provisions of the Policy Directive, the MDOC grievance procedure provides for requests for extensions of time. Exhaustion is required even if the inmate subjectively believes that the remedy is not available or that the procedure is "ineffectual or futile." *Napier v. Laurel County, Ky.*, 636 F.3d 218, 222 (6th Cir. 2011). The point of the exhaustion requirement is to give the prison authorities the opportunity to resolve the inmates' complaints. *See Jones v. Bock*, 549 U.S. at 204 ("Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court."). Had the Plaintiff filed his Step III appeal within 10 days of his discharge from the hospital, he could have given the prison the opportunity to consider an extension, or to excuse his untimeliness due to extenuating circumstances. Instead, he waited to file his Step III appeal months after he filed his civil complaint. Under the PLRA, "a prison inmate may not complete the grievance process after filing suit." *Boulding v. Michigan Dep't of Corr.,* 2015 WL 136195, at *3 (E.D. Mich. 2015), citing *Larkins v. Wilkinson,* 1998 WL 898870

at *2 (6th Cir. Dec.17, 1998) (unpublished).[4]

Apart from Plaintiff not filing a Step III grievance appeal before filing his complaint, there is another reason that he has not properly exhausted his claim against Defendant Vettraino: He did not name her in his Step I and Step II grievances, in violation of P.D. 03.02.130, ¶ R, which provides:

> "The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e.,who, what, when, where, why, how). Dates, times, places, and names of all those involved in the issue being grieved are to be included." (Underscore in the original).

Plaintiff's Step I grievance does not name Defendant Vettraino. And while it mentions that at some point in the past, he "notified staff of a discharge he was having from his penis and was told that it was normal for a guy his age," the main focus of the grievance was his hip and back issues. Significantly, the grievance lists the date of the incident complained as October 21, 2014, more than 14 months after he saw Nurse Vettraino on June 4, 2013. Regardless of whether or not it was appealed through Step III, this grievance did not properly exhaust the present claim against Defendant Vettraino.

## IV. CONCLUSION

I recommend that Defendant Vettraino's motion for summary judgment be construed

---

[4] I have read and considered Plaintiff's supplemental pleading [Doc. #22], in which he cites the MDOC's response to his post-complaint Step III appeal. He argues that the rejection of that appeal shows that he would not have received relief even if he had timely filed the Step III appeal. But that does not alter the PLRA's requirement that a claim be fully and properly exhausted before filing suit.

as an unenumerated motion under Fed.R.Civ.P. 12(b), that it be GRANTED, and that Defendant Vettraino be DISMISSED WITHOUT PREJUDICE.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                                    s/R. Steven Whalen
                                                    R. STEVEN WHALEN
                                                    UNITED STATES MAGISTRATE JUDGE

Date: January 26, 2016

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on January 26, 2016, electronically and/or by U.S. mail.

                                                s/C. Ciesla
                                                Case Manager